Filed 3/5/26  P. v. Suarez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | G065241 |
|     v. | (Super. Ct. No. 21DL0850) |
| JOSE LUIS SUAREZ, | O P I N I O N |
|     Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Lewis W. Clapp, Judge. Affirmed.

Laura Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

In 2009, Jose Luis Suarez was sentenced to life in prison without the possibility of parole (LWOP) for a special circumstance murder he committed when he was 16 years old. His conviction and sentence were affirmed on direct appeal. In 2017, his LWOP sentence was vacated pursuant to a habeas petition and, because he was a minor at the time of the crime, the matter was reassigned to the juvenile court for a transfer hearing pursuant to Welfare and Institutions Code section 707.[1] After conducting a hearing, the juvenile court found Suarez was not amenable to rehabilitation while under the jurisdiction of the juvenile court and ordered jurisdiction over him transferred to the criminal court for his post-habeas resentencing.

This appeal is from that order. Suarez's appointed attorney filed a brief pursuant to the procedures set forth in *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738. While not arguing against her client, counsel represented she found no arguable issues to advance on appeal and asked us to review the appellate record, which we have done. We also advised Suarez of his right to file a written argument on his own behalf, but he has not done so. Finding no arguable issues, we affirm the transfer order.[2]

---

[1] Unless otherwise stated, all further statutory references are to the Welfare and Institutions Code. Pursuant to section 602, a 16-year-old minor accused of a crime falls within the juvenile court's jurisdiction "[e]xcept as provided in section 707." Section 707 authorizes the People to seek to transfer jurisdiction over the minor to the adult criminal court pursuant to the terms and provisions of that section.

[2] On July 17, 2025, while this appeal was pending, the criminal court resentenced Suarez to formal probation on certain terms and conditions and vacated the order certifying the matter to juvenile court. We have taken judicial notice of the docket in the criminal case (No. 06NF1800), solely to

2

FACTS AND PROCEDURAL HISTORY

Suarez was 16 years old and a member of the La Jolla gang when he shot Manuel Rodriguez four times, killing him. The following summary of the facts surrounding the murder are taken from this court's unpublished opinion on the direct appeal from Suarez's conviction. (*People v. Ortega and Suarez* (April 26, 2011, G041522) [nonpub. opn.].)

"Suarez and [his then-girlfriend] Ortega gathered in May 2006 with fellow La Jolla gang members Christian Jimenez, Rafael Luna, and others at a friend's house, where Suarez informed the group that members of the rival Atwood gang had driven through La Jolla territory in Placentia. Jimenez testified Suarez, whose gang monikers included 'Woody' and 'Silent,' urged the group to retaliate for Atwood's perceived transgression. According to Jimenez, Suarez stated the group 'had to go back' to Atwood territory and, when Jimenez remarked on the danger of doing so unarmed, Suarez told them he had a gun.

"Ortega took the wheel of a vehicle she had stolen the night before, and Suarez, Jimenez, and Luna joined her. As Ortega drove down a street in territory Atwood claimed, they passed Rodriguez, who was walking towards an ice cream truck with Pablo Moreno and another friend. Suarez said he recognized Rodriguez. Ortega made a U-turn and, after hesitating, stopped the car near the ice cream truck. Someone outside the vehicle yelled, 'Woody is coming,' and Rodriguez's friends fled, but he stayed behind. As Suarez stepped out of the vehicle, Rodriguez walked quickly towards a nearby park, but Suarez shot him in the back five times. Rodriguez died from blood loss due to gunshot wounds to his heart and lungs.

determine the status of Suarez's resentencing and the disposition of this matter.

"Ortega drove the group to a fastfood restaurant to eat and then to another gang member's home in Anaheim. Jesus Flores, who had dated Suarez's sister, testified he picked up Suarez and Ortega and drove them to his place in Long Beach that night. Ortega had a backpack. Flores admitted Suarez's mother had been worried Suarez was involved in the Atwood shooting. Suarez's uncle collected Ortega and Suarez the next morning to drive them to Texas, but United States Marshalls apprehended the duo in Arizona.

"Suarez admitted the shooting in recorded jail cell statements he made to another La Jolla gang member.[3] Suarez discarded the murder weapon in a dumpster near the California and Arizona border. In a photographic lineup, Rodriguez's friend Moreno quickly identified Suarez as the shooter." (*People v. Ortega and Suarez, supra,* G041522.)

"Ortega and Suarez both testified. . . . [¶] Suarez testified he often was armed and that he accompanied Ortega to find drugs in Atwood Park. He recognized Rodriguez from the 'MySpace' internet site and knew he was an Atwood gang member. According to Suarez, Rodriguez walked towards Ortega's vehicle with something in his hand. Believing Rodriguez was going to fire a weapon, Suarez stepped out of the vehicle and shot Rodriguez." (*People v. Ortega and Suarez, supra,* G041522.)

---

[3] Regarding the circumstances leading up to the shooting, Suarez said: "'And [I] got out of the car and then fucking he saw the gun, and he started, he tried to run. I was like [this] close to the fool, from like here to right there, and I shot [him] five times in the back.'" (*People v. Ortega and Suarez, supra,* G041522.)

Suarez was convicted of first-degree murder (Pen. Code, § 187, subd. (a)), with special circumstances,[4] and was sentenced to LWOP. He began serving his prison sentence at the age of 19. His conviction and sentence were affirmed on direct appeal. (*People v. Ortega and Suarez, supra,* G041522.)

On April 14, 2014, Suarez filed a petition for writ of habeas corpus on the basis his LWOP sentence constituted cruel and unusual punishment because he was only a minor when he committed the murder. On January 27, 2017, Suarez's LWOP sentence was vacated but the judgment of conviction was ordered to remain in full force and effect. The matter was assigned to a criminal department of the superior court for a new sentencing hearing. At the resentencing hearing on December 17, 2021, the trial court ordered the criminal proceedings suspended, certified Suarez to the juvenile court, and ordered that court to determine whether Suarez should be transferred to a criminal court pursuant to section 707.[5]

After multiple status hearings and continuances throughout 2022 and 2023, the section 707 hearing commenced on January 23, 2025. The court received reports by the probation department, a psychological evaluation of Suarez, and transcripts from Suarez's murder trial. Multiple witnesses

---

[4] The jury found true a special circumstance allegation that Suarez actively participated in a criminal street gang and committed the murder to further the activities of the gang (Pen. Code, § 190.2, subd. (a)(22)), and further found true allegations Suarez committed the murder for the benefit of a gang (*id.*, § 186.22, subd. (b)(1)) and personally discharged a firearm causing death (*id.*, § 12022.53, subd. (d)).

[5] It appears the trial judge then reassigned the matter to himself, sitting as a juvenile court judge, to conduct the section 707 transfer hearing.

testified at the hearing, including Suarez, relatives of the victim, a gang expert, an expert psychologist, and relatives of Suarez.

In an order dated January 27, 2025, the court transferred jurisdiction to the criminal court for resentencing, explaining in detail its reasons for doing so.

Suarez timely appealed the transfer order. While this appeal was pending, the criminal court resentenced Suarez to three years of formal probation.

## DISCUSSION

As mentioned at the outset, appellate counsel was unable to find any arguable issues to raise on Suarez's behalf. Counsel did, however, identify two unbriefed issues to assist us in our review of the record: (1) whether the juvenile court's findings in support of its order transferring jurisdiction of Suarez to criminal court pursuant to section 707 were supported by substantial evidence, and (2) whether, based on the totality of the circumstances, the juvenile court abused its discretion in granting the motion to transfer.

Having reviewed the record, we find no error; we conclude the juvenile court's findings are supported by substantial evidence and the court did not abuse its discretion transferring jurisdiction over Suarez to criminal court.

### I.

#### LAW APPLICABLE TO SECTION 707 TRANSFER MOTIONS
#### AND STANDARD OF REVIEW

"In order to find that the minor should be transferred to a court of criminal jurisdiction, the court shall find by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction

6

of the juvenile court." (§ 707, subd. (a)(3).)[6] The People bear the burden of proof on whether there should be a transfer of jurisdiction to the criminal court. (Cal. Rules of Court, rule 5.770(a).)

In making its determination, the court must consider the following criteria: (1) the minor's degree of criminal sophistication; (2) whether the minor could be rehabilitated in the time remaining before the end of the juvenile court's jurisdiction;[7] (3) any previous delinquent history; (4) success of any previous attempts by the juvenile court to rehabilitate the minor; and (5) the circumstances and gravity of the offense allegedly committed by the minor. (§ 707, subds. (a)(3)(A)(i), (B)(i), (C)(i), (D)(i), (E)(i).) The statute also sets forth a nonexhaustive list of factors for the juvenile court to consider with respect to each of the five criteria. (*Id.*, subds. (a)(3)(A)(ii), (B)(ii), (C)(ii), (D)(ii), (E)(ii).)

"[T]he statute does not require that any one factor be given greater weight than others in determining whether the minor is amenable to rehabilitation while under the jurisdiction of the juvenile court." (*Miguel R., supra,* 100 Cal.App.5th at p. 156.) Therefore, the court has discretion to

---

[6] Prior to 2023, the standard of proof under section 707 was a lower standard of preponderance of the evidence. Effective January 1, 2023, the standard of proof was heightened to clear and convincing evidence. (*In re E.P.* (2023) 89 Cal.App.5th 409, 415–416; Assem. Bill No. 2361 (2021–2022 Reg. Sess.).) The latter standard governed the 2025 hearing at issue here.

[7] This factor is not the same as the ultimate determination under section 707, subdivision (a)(3), i.e., whether the minor is amenable to rehabilitation while under the jurisdiction of the juvenile court. The second factor focuses on the *time* needed to rehabilitate as compared to the time remaining in the juvenile court's jurisdiction. The ultimate finding, however, "concerns a global assessment of the minor's suitability to rehabilitation within the juvenile court system." (*In re Miguel R.* (2024) 100 Cal.App.5th 152, 166–167 (*Miguel R.*).)

conclude that one or more of the factors predominate even though some or all of the other factors might point to a different result. (*Id.* at p. 168.) "[T]he statute says nothing about the relative weight to be given to any of the criteria." (*Id.* at p. 166.)

"If the court orders a transfer of jurisdiction to the criminal court, the court must recite the basis for its decision in an order entered on the minutes. The court must state on the record the basis for its decision, including how it weighed the evidence and identifying the specific factors on which the court relied to reach its decision. This statement must include the reasons supporting the court's finding that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (Cal. Rules of Court, rule 5.770(c).)

"We review the juvenile court's ruling on a transfer motion for abuse of discretion. [Citation.] 'The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' [Citation.] The juvenile court's findings with respect to each of section 707's five criteria are findings of fact reviewed for substantial evidence. [Citation.] In conducting substantial evidence review, we draw all reasonable inferences in support of the court's findings. [¶] Likewise, we review for substantial evidence the juvenile court's ultimate finding 'that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court.' (§ 707(a)(3).) Because the juvenile court must make that finding by clear and convincing evidence, we 'determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable

8

trier of fact could have made the finding of high probability demanded by' the clear and convincing evidence standard." (*Miguel R., supra,* 100 Cal.App.5th at p. 165.)

## II.

## THE JUVENILE COURT DID NOT ABUSE ITS DISCRETION IN ORDERING THE TRANSFER TO CRIMINAL COURT, AND ITS FACTUAL FINDINGS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE

At the outset, we commend the juvenile court judge (as defendant's counsel did below) for conducting a thorough, fair, and thoughtful hearing on this matter, and for his detailed findings and order. We have reviewed the record and conclude it contains substantial evidence supporting the court's factual findings and ultimate conclusion Suarez is not amenable to rehabilitation while under the jurisdiction of the juvenile court.

### A. *Proof of Criminal Sophistication*

As to the first factor—criminal sophistication—the juvenile court found the People did not meet their burden by clear and convincing evidence.[8] On the one hand, the manner in which Suarez committed the murder and

---

[8] When considering "[t]he degree of criminal sophistication exhibited by the minor" (§ 707, subd. (a)(3)(A)(i)), "the juvenile court shall give weight to any relevant factor, including, but not limited to, the minor's age, maturity, intellectual capacity, and physical, mental, and emotional health at the time of the alleged offense; the minor's impetuosity or failure to appreciate risks and consequences of criminal behavior; the effect of familial, adult, or peer pressure on the minor's actions; the effect of the minor's family and community environment; the existence of childhood trauma; the minor's involvement in the child welfare or foster care system; and the status of the minor as a victim of human trafficking, sexual abuse, or sexual battery on the minor's criminal sophistication" (*id.*, subd. (a)(3)(A)(ii)).

then attempted to flee,[9] combined with his gang affiliation and prior experience with the criminal justice system, did reflect some measure of criminal sophistication. On the other hand, the juvenile court found Suarez was just a kid who wanted to fit in when he committed the murder and had suffered a "cruel and high amount of trauma" as a child, which the court concluded counterbalanced the argument he was sophisticated.[10] We find no error in the court's conclusion that, on balance, the People had not proved by clear and convincing evidence that defendant acted with criminal sophistication.

*B. Whether Suarez Could Be Rehabilitated Before the End of the Juvenile Court's Jurisdiction*

"[T]he focus of the second criterion is whether there is enough time to rehabilitate the minor while the minor is still eligible to remain under juvenile court jurisdiction." (*Miguel R., supra,* 100 Cal.App.5th at p. 166.) When considering this factor, "the juvenile court shall give weight to any relevant factor, including, but not limited to, the minor's potential to grow and mature." (§ 707, subd. (a)(3)(B)(ii).)

The juvenile court found the People established by clear and convincing evidence that there is not sufficient time to rehabilitate Suarez in the two years remaining in the juvenile court's jurisdiction over him. (See §

---

[9] Suarez knowingly drove into rival gang territory with a loaded firearm and then shot the victim unprovoked multiple times after he had already shot him and the victim was on the ground.

[10] As a child, Suarez grew up in a home with domestic violence and was physically, emotionally, sexually, and verbally abused. He witnessed his father physically abuse his mother, and he was physically and verbally abused by his mother. He also was bullied by neighborhood kids.

10

607, subd. (d) ["The [juvenile] court may retain jurisdiction over a person who is 25 years of age or older for a period not to exceed two years from the date of disposition if the person is found to be a person described in Section 602 by reason of the commission of an offense listed in subdivision (b) of Section 707"].)

Substantial evidence supports this finding. While in prison after the murder, Suarez committed multiple stabbings and, for one of them, was sentenced to an additional eight years in prison to run consecutive to his sentence in the underlying proceeding. The evidence from the probation department was that it would have no ability to supervise someone who is incarcerated in California state prison, and the juvenile court believed it an important part of rehabilitation to transition a person back into the community, which the court would not have the time to do or the jurisdiction to oversee. We see no reason to disturb this finding.

*C. Previous Delinquent History*

As to Suarez's prior delinquent history, the juvenile court found the People had met their burden of showing by clear and convincing evidence that this factor weighed in favor of transferring Suarez to criminal court. Substantial evidence supports this finding, as Suarez had a documented history of escalating gang violence and two prior juvenile commitments before he committed the murder.

*D. Success of Prior Attempts to Rehabilitate Suarez*

The juvenile court found against the People on this factor, finding there had been insufficient attempts to rehabilitate Suarez during his incarceration in state prison.

11

*E. Gravity of the Offense*

When considering "[t]he circumstances and gravity of the offense alleged in the petition to have been committed by the minor" (§ 707, subd. (a)(3)(E)(i)), "the juvenile court shall give weight to any relevant factor, including, but not limited to, the actual behavior of the person, the mental state of the person, the person's degree of involvement in the crime, the level of harm actually caused by the person, and the person's mental and emotional development" (*id.*, subd. (a)(3)(E)(ii)).

The juvenile court understandably gave great weight to this factor and found the gravity of Suarez's offense weighs in favor of his transfer to criminal court. Substantial evidence supports this finding. This was a special circumstance murder in which Suarez was the shooter. He deliberately went into rival gang territory armed with a loaded gun and shot the victim multiple times, even after the victim was incapacitated. And he carried out the shooting for the benefit of his gang.

Viewing the entire record and the trial court's findings on the section 707 factors, we conclude the court was well within its discretion in concluding Suarez is not amenable to rehabilitation while under the jurisdiction of the juvenile court.

We have reviewed the record for any other arguable issues and have found none. We thus affirm the order.

## DISPOSITION

The postjudgment transfer order is affirmed.


GOODING, J.

WE CONCUR:


MOORE, ACTING P. J.


SCOTT, J.